F9LKVIDM

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   VIDIVIXI, LLC,

4                   Plaintiff,

5              v.                           15 CV 7364 (JGK)

6   FRANCIS T. BRADLEY, et al.,

7                   Defendants.

8   ------------------------------x
                                      New York, N.Y.
9                                     September 21, 2015
                                      3:00 p.m.
10
    Before:
11
                      HON. JOHN G. KOELTL,
12
                                      District Judge
13
                         APPEARANCES
14
    MATTHEW ADAM PEK
15       Attorney for Plaintiffs

16  RAO LAW GROUP
         Attorney for Grattan Defendants
17  BY:  SIDDARTHA RAO

18  JEAN LIN, Pro Se Defendant

19

20

21

22

23

24

25

F9LKVIDM

1              THE DEPUTY CLERK:  Vidivixi versus Grattan.

2              All parties, please state who they are, for the

3       record.

4              MR. PEK:  Good afternoon, your Honor.  Matthew A. Pek,

5       Esq., The Peksquire Group, 387 Grand Street, Suite K203, New

6       York, New York 10002, counsel for plaintiff.  Good afternoon,

7       your Honor.

8              THE COURT:  Good afternoon.

9              MR. RAO:  Thank you, your Honor.  Siddartha Rao, Rao

10      Law Group.  I'm representing Mark Grattan, who's also here

11      today in court, and the Mark Grattan building and design

12      defendant.

13             MS. LIN:  My name is Jean Lin.  I'm representing

14      myself.  I'm also the sole owner and operator of Jean Lin LLC.

15             THE COURT: Okay.  Good afternoon, all.

16             This is a order to show cause.  It seeks to bring on a

17      preliminary injunction and it also includes a temporary

18      restraining order.  So I'll listen to the parties.

19             An observation:  I don't have any papers in opposition

20      to the order to show cause for a preliminary injunction and a

21      temporary restraining order.  It's plain that I will set a

22      schedule for the response to the motion papers for a

23      preliminary injunction, a response, a reply, and then set it

24      down for a hearing.

25             So the real issue is the temporary restraining order.

F9LKVIDM

1   The plaintiff alleges that the defendant is using the trademark

2   name Vidivixi and that the defendant has also been effectively

3   siphoning proceeds that should go to Vidivixi, to himself.  And

4   there is an issue with respect to certain specific pieces of

5   furniture which I believe Ms. Lin has and which the plaintiff

6   says belongs to the plaintiff and not the defendant.  So there

7   is an issue about what happens to that furniture while the

8   preliminary injunction is decided.

9           So the question is:  Should there be a temporary

10  restraining order before the preliminary injunction can be

11  decided, and what the extent, if any, of that temporary

12  restraining order should be.

13          Okay, Mr. Pek.

14          MR. PEK:  Thank you, your Honor.

15          Actually, I should first note for the record, about an

16  hour ago, maybe two hours ago, I received a phone call from

17  Ms. Lin's corporate counsel, who has advised her in the past on

18  nonlitigation related matters, including the incorporation of

19  her LLC, which was also a defendant here.  He has, Aaron

20  Goldberg of Holland & Knight has, given me all assurances, as

21  has Ms. Lin -- from the very first response I received from her

22  after writing my first letter on behalf of my client,

23  effectively terminating the lease and consignment agreement

24  whereby my client was permitted to showcase these five pieces

25  of furniture in Ms. Lin's showroom referred to as Colony -- we

F9LKVIDM

1   have received all assurances that the status quo has been

2   preserved.  And Ms. Lin astutely responded to me at the outset

3   that it was her understanding that Vidivixi was a partnership

4   between effectively Francis T. Bradley, one of the plaintiffs,

5   and Mark A. Grattan, one of the defendants, and not solely

6   owned by my client; therefore, pending a court order or mutual

7   resolution between the parties, she would effectively be taking

8   a hands-off position, which is exactly effectively what we

9   would have hoped for.

10          Having said that, and having shared a conversation

11   with Mr. Goldberg, who has advised Ms. Lin in connection with

12   this matter, likely -- and I should just note he is a corporate

13   attorney and I do want to just disclaim that -- that I am

14   confident that, following the procedural history, if you will,

15   that I have just recounted for your Honor, along with my phone

16   call with Ms. Lin's counsel, I do not think a temporary

17   restraining order with respect to those five pieces is

18   necessary pending a hearing on the preliminary injunction.

19          THE COURT:  Okay, thank you.

20          Is there any dispute with respect to entering a

21   temporary restraining order that doesn't affect the five

22   pieces, that essentially says that the defendants can't use the

23   name Vidivixi until the preliminary injunction is decided?

24          MR. PEK:  Your Honor, that is a separate issue that we

25   in fact do continue today and, as set forth in our papers,

F9LKVIDM

1   believe is necessary, based on quite simply email

2   correspondence and invoices that were discovered by my client

3   not long ago indicating -- now, we don't know whether any

4   transactions have in fact taken place but the mere fact that

5   these invoices bearing the Vidivixi mark, which my client is

6   the sole owner of, and I believe we have included the United

7   States Patent and Trademark Office serial number registration

8   to that effect, that irreparable harm has been suffered and

9   will continue to be suffered so long as any business is done

10  under the name Vidivixi, including, I should mention, the

11  website itself, which was recently reactivated but is beyond my

12  client's control.  It's a dicey matter because, to be perfectly

13  frank, Mr. Grattan, as I understand it, by my client,

14  Mr. Bradley, was authorized to register the domain name as the

15  registrant for Vidivixi.com.

16          However, my client has, as with all other things in

17  this business -- and I don't think that there will be a dispute

18  as to opposition to this effect -- financed every nickel and

19  penny of the operation.  Nonetheless, my client has no means of

20  access to the domain name itself; it was recently reactivated.

21          But another concern is that there is a click-through

22  mechanism whereby the defendant has a website of his own -- I

23  believe it's Mark Grattan, just his name, eliminating the

24  middle initial or middle name, dot-com, that if you visit it,

25  it's an automatic click-through to Vidivixi.com.  That, coupled

F9LKVIDM

1    with the invoice we have discovered and the sales and

2    effectively what we aim to achieve with respect to those

3    invoices at a hearing to be set by your Honor, at your Honor's

4    discretion, is an accounting and, if necessary, a creation of

5    constructive trust or a position of constructive trust for any

6    proceeds that, in our position, we believe would be ill-gotten

7    and should be allocated in accordance with Vidivixi's ownership

8    structure and reflective of the true individuals that do own,

9    or individual I should say, the LLC and the Vidivixi enterprise

10   before it was incorporated.

11             THE COURT:  Okay.

12             Let me listen to the defendant.

13             MR. RAO:  Yes, your Honor.  First, I just want to

14   point out one procedural matter.  Plaintiffs' counsel did not

15   serve papers until Saturday, after midnight.  He subsequently

16   served exhibits on Sunday.  Many of the papers appear to be

17   unsigned, I believe they are missing papers, and I don't even

18   know if I have full notice of what it is that plaintiff has

19   filed because this case was not --

20             THE COURT:  Just keep your voice up, please.

21             MR. RAO:  Yes, your Honor.  I just want to correct a

22   few misstatements.

23             First, there's no trademark for Vidivixi.  There is

24   actually no registered mark.  Mark Grattan --

25             THE COURT:  Maybe you want to go to the podium?  It

F9LKVIDM

1   might be easier than bending over.

2           MR. RAO:  Sure.

3           THE COURT:  Thank you.

4           MR. RAO:  Yes, your Honor.

5           We're dealing with a fairly extraordinary fact

6   pattern, where Francis Bradley, the petitioner, and Mark

7   Grattan were partners in a partnership for over a year, held

8   themselves out as partners, signed contracts as partners, sent

9   emails as partners; in fact, the papers were served on Mark at

10  his address at Vidivixi.com.  Respondent has always had control

11  over the domain.  In fact, the website was originally set up as

12  a mirror to MarkGrattan.com.  Respondent designed the logo and

13  all the furniture which is the subject of this TRO.  These are

14  facts that are based on documents that I have reviewed,

15  business records of Vidivixi.  It's advertised on the website

16  as a partnership and, as I said before, there's no actual

17  trademark.

18          What has happened here is that petitioner, without

19  telling respondent, both filed for a trademark and incorporated

20  an LLC on August 26th, a mere day after Mr. Grattan sent a

21  partnership proposal to Mr. Bradley to try to document the

22  partnership which had existed for year.  If I understand

23  petitioner's argument correctly, he is trying to say that the

24  mere filing of an LLC creates an ownership in a mark Vidivixi,

25  that LLC, as I said before, was neither disclosed to Mark

F9LKVIDM

1    Grattan nor is there any basis to assume that it owns the mark

2    Vidivixi.

3           This would be like me filing an LLC application for

4    McDonalds LLC and then serving demand upon McDonalds for their

5    brand, goodwill and profits, and there is no legal basis for

6    that.

7           As far as the preliminary injunction and TRO --

8           THE COURT:  I'm sorry, in the papers that the

9    plaintiff submitted, there is an application that was filed for

10   Vidivixi in March of 2015.

11          MR. RAO:  Your Honor, that application is still

12   pending.  There's been not only no registration but it hasn't

13   even published for opposition.  In fact, I have very strong

14   legal grounds to believe it's void, it is an intent-to-use

15   application and was filed on behalf of the wrong party.  With

16   intent-to-use applications, they have to be filed on the party

17   actually using the application.

18          Here, the application was filed by Francis T. Bradley

19   LLC, which is claimed as a New York LLC; there is no actual

20   record of Francis T. Bradley LLC on the New York Department of

21   State website.  I did a business search and couldn't find any

22   record of it.  In any case, it's alleged as a mark of Vidivixi

23   LLC, the application is void ab initio, it hasn't registered,

24   and it hasn't published, it doesn't create any rights.

25          We have an issue here, your Honor, with petitioner's

F9LKVIDM

1    counsel having sent numerous letters threatening legal action

2    if furniture is not returned to him, on the basis of an LLC

3    filing well after the fact and long after both Mark Grattan and

4    Francis Bradley had been in a partnership.  That partnership is

5    based on, unfortunately, not an incorporation of a partnership

6    document but several emails and, as I said, the domain

7    Mark@Vidivix.com, with which petitioner corresponded with Mark

8    Grattan on numerous occasions.

9             They employed outside people, as a partnership; as I

10   said, they signed contracts as partners; frequently

11   Mr. Bradley, Mr. Pek's client, was copied on emails where Mark

12   Grattan called himself a cofounder.  He at no point objected.

13   This went on for over a year.

14            So, it's fairly extraordinary that Mr. Pek would come

15   into court today on the basis of an LLC filing and attempt to

16   not preserve the status quo but actually upset the status quo

17   and prevent my client from doing what he's been doing for over

18   a year.

19            THE COURT:  The plaintiff says that your client

20   established a click-through website so that if there were

21   people who were trying to buy goods from Vidivixi, they were

22   routed to your client.

23            MR. RAO:  It's actually the opposite, your Honor.

24            But, first, I want to correct one other statement,

25   which is that there have actually been no sales and no

1    proceeds.  Largely, this is because within the designer

2    community there's now confusion due to Mr. Bradley's new

3    assertion that there is no partnership.  Nobody knows who to

4    write checks to, nobody knows really what the partnership is

5    anymore.  So they haven't been able to sell any furniture.

6    Regardless of whatever happens today, there won't be any sale

7    of furniture until this business dispute is sorted out.

8            As to your question, when the website was originally

9    set up, my client, Mark Grattan, took the lead in developing

10   the site, designed the logo.  At the time, there was no

11   content, so he mirrored Vidivixi with his site so they could

12   have a presence.

13           Today, it's not that Vidivixi points to him but his

14   site points to them because he is the face of Vidivixi, he is

15   the person who has attended every meeting --

16           THE COURT:  "He," Mark Grattan?

17           MR. RAO:  Yes.  He has created the contacts, the

18   network, and he has designed all the furniture.  It is true

19   that Mr. Bradley has financed a good portion of that but he's

20   done so as a silent partner, both in the legal sense and in

21   literally not responding to emails and being silent.  He has

22   simply not put in the work and the effort and the sweat that my

23   client has.  It's a very typical arrangement, that one partner

24   provides financing and another partner provides sweat equity.

25           I would also add that I have looked at documents

F9LKVIDM

1   definitely showing that at the inception of this partnership

2   Mark Grattan donated two of his designs to the partnership in

3   lieu of a cash donation.  So there was a

4   sweat-effort/intellectual property, I would say, donation to

5   the partnership.  It's very clear they were partners, from

6   their own statements to third parties.

7          THE COURT:  The plaintiff says that there were these

8   invoices which they have attached which were payable to

9   Vidivixi and, so far as the plaintiff knows, those invoices

10  were then paid to Mark Grattan.

11         MR. RAO:  Yes, your Honor.  As I understand it, the

12  plaintiff took a hard drive out of Mark Grattan's workshop,

13  accessed many of his personal files without his permission, and

14  did find invoicing with the logo Vidivixi.  Mark Grattan, of

15  course, has an independent design practice.  He has become so

16  identified with Vidivixi that he has often identified himself

17  as Mark Grattan of the Vidivixi partnership, much as a musician

18  when they play with a different band might identify themselves

19  by their stage name.  I don't think it was any more or less

20  than that.

21         I wish that Mr. Bradley had simply attempted to

22  negotiate with Mark.  What in fact happened was, as soon as

23  Mark sent a proposal to Mr. Bradley, the next day he began

24  sending legal demand letters and would not negotiate at all.

25         THE COURT:  You say that until this case is decided,

F9LKVIDM

1    there will be no sales.  What does that mean?  No sales of

2    what?

3            MR. RAO:  Well, there's currently furniture being held

4    in the showroom known as the Colony.  That furniture has not

5    been sold.  I believe what triggered this entire dispute were

6    sales inquiries that came in.  This necessitated some formal

7    partnership agreement.  Rather than negotiate that agreement,

8    petitioner has filed for a TRO.  When I say there will be no

9    sales, obviously I received papers Saturday at midnight and

10   Sunday at 5:00 p.m., so I have done what inquiry I can, but

11   based on my inquiry within the marketplace for high-end

12   furniture, design people are not willing to execute on sales

13   orders until they know who they should be paying.

14           THE COURT:  So does that mean that you agree that

15   there will be no sales under the Vidivixi mark until the

16   preliminary injunction is decided?

17           MR. RAO:  That's my understanding, your Honor.  As a

18   practical matter, there can't be and my client is happy to

19   abide by a no-sale until preliminary injunction is decided.

20           THE COURT:  Okay.

21           You've seen the order to show cause for preliminary

22   injunction --

23           MR. RAO:  Yes, your Honor.

24           THE COURT:  -- with the temporary restraining order?

25           Have you gone through the individual paragraphs?

F9LKVIDM

1          MR. RAO:  I have, your Honor.

2          THE COURT:  So, which paragraphs do you object to?

3          MR. RAO:  If the Court will permit, I actually left my

4   copy on the bench.

5          THE COURT:  Sure.

6          MR. RAO:  I'll get it.  Thank you.

7          THE COURT:  Thank you.

8          MR. RAO:  Your Honor, at a higher level, I think what

9   I am trying to say is that the request for relief is based on

10  several serious misstatements of fact.  But to address your

11  specific question:

12          I believe petitioner wants to enjoin my client from

13  any use of the Vidivixi mark.  Currently, he has the domain

14  Mark@Vidivixi.com, which petitioner has not only served papers

15  to him and has corresponded with him at, he corresponds with

16  others as Mark@Vidivixi.com.  It's effectively shutting down

17  his ability as a partner in this business to pursue any

18  business if he cannot use the email Mark@Vidivixi.com.

19          THE COURT:  So --

20          MR. RAO:  So that would be 3(a).  That would also be

21  3(b)?

22          THE COURT:  Yes, but the temporary restraining order

23  really is on page 4, ordered that --

24          MR. RAO:  So -- sorry, your Honor.  Paragraph (a) and

25  paragraph (b), with the understanding that that furniture has

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1   not been sold and is not going to be sold.

2          THE COURT:  So you object to paragraph (a)?

3          MR. RAO:  Yes, your Honor.

4          THE COURT:  Okay.  And (b) is moot?

5          MR. RAO:  Yes, your Honor.

6          I think one of the issues with (c) is, I'm not

7   entirely clear what it is that petitioner is talking about.  At

8   least from my reading of their papers, there's no factual basis

9   for the assertion that my client would destroy the mark.  Since

10  he is currently in a partnership with Mr. Bradley, it would

11  actually be irrational for him to cause harm to the Vidivixi

12  mark.  It's as much his identity and also petitioner's.

13         So I believe my objection to (c) is, it's too vague

14  for me to understand what conduct they're referring to.

15         MR. PEK:  Your Honor, I'm willing to waive (c) and

16  strike that if it will facilitate a more expeditious, narrower

17  resolution of the issues that are actually at bar, many of

18  which my adversary has just noted upon.

19         THE COURT:  Okay.  So the parties agree to strike (c),

20  the parties agree to strike (b) as moot.

21         Okay, (d)?

22         MR. RAO:  With respect to (d), I don't think anyone

23  has a problem with the status quo.  Mark Grattan has always

24  been the administrator of the domain.  Again, I really don't

25  understand (d), I can't agree to that, I have to object to

F9LKVIDM

1    that.

2              THE COURT:  Okay.  We will take that up.

3              All right.

4              MR. RAO:  Paragraph (e), your Honor, is a somewhat of

5    a mirror of paragraph 3(b), that I pointed out earlier.  As I

6    said, Mr. Grattan is a partner of Vidivixi, he interacts with

7    the entire design community as a partner of Vidivixi, and

8    paragraph (e) would effectively stop him from doing what he

9    does as a design professional.

10             THE COURT:  Okay.

11             MR. RAO:  And as I said before, paragraph (f) prevents

12   him from using a business email, which petitioner has consented

13   to for a very long time.  In fact, they set up those emails

14   together and, as I said, they have corresponded back and forth

15   on those emails.

16             THE COURT:  Okay.

17             MR. RAO:  With respect to paragraph (g), I'm not

18   entirely sure what the petitioner is getting at.  It's actually

19   petitioner who has attempted to register Vidivixi as a word

20   mark.  My understanding of trademark law may be incomplete but

21   I believe that would prevent a third party from registering the

22   domain as a mark.

23             As I've said, I believe that registration is a void

24   application in any event, but with respect to paragraph (g), I

25   can represent that my client has no desire at this point to

F9LKVIDM

register a mark until this dispute has been resolved.  To the

extent that that's what (g) is getting at, the trademark

registration, we can agree to that.

THE COURT:  Okay.

MR. RAO:  And then with respect to paragraph (h),

again, in light of the fact that this is a partnership, it's

unclear what unfair competition is referring to.  I actually

don't know how to respond to that except to say that if there

were any sort of proceed or sale from Vidivixi -- and there has

been none to date -- I have to believe my client would agree to

inform petitioner.  And this is separate from the five pieces

of furniture which we have agreed are not going to be sold

until this is resolved, but if the issue is some suspicion that

he has somehow sold under the name, we can clear that up by

saying that any sales have to be agreed to, until this is

resolved.

Paragraph (i), again, is not a preservation of

status quo; it's actually an extraordinary request to undo the

status quo, namely, the partnership.  And I am going to object

to that as well.

THE COURT:  Okay.

MR. PEK:  Your Honor, if I may respond to a few

assertions that my adversary has put on the record?

THE COURT:  Yes, yes.

MR. PEK:  First of all, it is well settled trademark

F9LKVIDM

 1    law that you need not be registered in order to obtain

 2    protection as a trademark.

 3            THE COURT:  I'm sorry, could you speak into the

 4    microphone.

 5            MR. PEK:  Forgive me, your Honor.

 6            Vidivixi --

 7            THE COURT:  You can sit down.

 8            MR. PEK:  Thank you, your Honor.

 9            It is well settled that a trademark need not be

10    registered or filed or applied for registration on the

11    principal or supplemental register with a USPTO in order to

12    enjoy the benefits provided by the policy, the unfair

13    competition upon which the Lanham Act is based.  There are

14    countless trademark infringement litigation between

15    unregistered marks.  A trademark is a source identifier.

16            My client, prior to ever joining up in whatever

17    capacity it was -- and I respectfully and firmly submit that

18    there is absolutely no writing or indication or agreement

19    confirming or indicating that these individuals are partners,

20    and that in the absence of such a writing the partnership law

21    dictates that profits follow losses and that losses are to be

22    shared 50/50.

23            So before we talk about any sales, which I will take

24    at face value, the representation of my adversary that there

25    were none, then in order to ascertain the profit, of course,

F9LKVIDM

1  you need to first understand the expense, which has been

2  entirely from my client's out-of-pocket investment, capital

3  contribution, expense, however you'd like to cast it.

4         To suggest that the registration or the application

5  and filing of an ITU application by my client, who has plainly

6  indicated on the registrar that Francis T. Bradley is the

7  owner, I do see that the legal entity was indicated a limited

8  liability company, but there's no name given.  That was, in my

9  understanding, an error on the part of my client, but it does

10 not remove Vidivixi from appropriate trademark protection.

11        But for my client bumping into, as I understand it,

12 Mr. Grattan -- who was a former colleague, friend and peer at

13 the Pratt Institute -- at a wood shop in Sunset Park,

14 Mr. Grattan never knew what Vidivixi was, and yet it was an

15 enterprise, a vision and a business in the making prior to

16 Mr. Grattan's involvement.  I will not deny, and neither will

17 my client, that Mr. Grattan absolutely did participate in a lot

18 of what Vidivixi did, and a lot of what they have achieved in

19 the way of critical acclaim and awards; for instance, the

20 Architectural Digest expo this past March.  That does not

21 entitle him to make sales under the Vidivixi name without

22 apprising my client.

23        And no matter what you want to call this relationship,

24 whether it's a freelance independent contractor or partnership,

25 if it is a partnership, then clearly that highest punctilio of

F9LKVIDM

1    loyalty and honor, as Judge Cardozo, in the case of Meinhard v.

2    Salmon, first articulated has been breached with no remorse and

3    in the most brazen and strident manner.

4           I also have to accept, looking at -- well, first,

5    looking at any of the invoices which bear the mark Vidivixi at

6    the top as a letterhead, if you will, all payments are to be

7    made directed specifically and unequivocally to Mark Grattan.

8    That simply doesn't comport with any characterization of the

9    relationship, as my adversary would have the Court believe.

10          More to the point, I look to an email which is taken

11   from my client's server, and but for it being sent to

12   Mark@Vidivixi.com, we would not have access to that server,

13   which, it's been known all along, both Francis and Mark, in

14   addition to Francis' cousin, Kyle Bradley, who helped set up

15   the domain name, of course, had access to, and confirming that

16   Mark had received payment for at least one piece of furniture,

17   for some four-figure amount.

18          I did not Bates stamp, I did not have time, but the --

19          THE COURT:  What exhibit?

20          MR. PEK:  It's Exhibit 8.  Page 15, page 15, subject

21   regarding invoice attached.  And it's from Mark Grattan to a

22   gentleman by the name of Hymie Brunette.  I have redacted all

23   sensitive information, routing numbers and such, as the two

24   exchanged emails --

25          MR. RAO:  I don't see any redactions.

F9LKVIDM

1        THE COURT:  I don't see a page 15.

2        MR. PEK:  It's the 15th page of Exhibit 8.

3        THE COURT:  I have Exhibit 8.  It only has five pages.

4        MR. PEK:  Well, your Honor, I will take fault for

5   that, but I'm positively certain that all of the highlighted

6   emails that were red-flagged for me and my client, and

7   therefore we were going to bring to the Court's attention, have

8   been highlighted and hand-selected.

9        THE COURT:  Okay.

10        (Pause)

11        THE COURT:  This is Exhibit 7.

12        MR. PEK:  Forgive me, your Honor.  As I explained to

13   Mr. Fletcher, when contacted following my submission of the

14   order to show cause papers to your Honor's law clerk -- I

15   believe his name is Matthew Ferrara, I don't want to get the

16   last name wrong -- I had to confess to Mr. Fletcher that I had

17   submitted to the Court my only copies of the

18   order-to-show-cause papers.  In my limited experience of

19   submitting similar papers requesting similar relief from the

20   Southern District, it's been my experience that I would receive

21   a phone call or often wait in the corridor while the judge

22   would sign and conform an order to show cause, instructing us

23   whether bond needed to be posted, granting certain relief,

24   denying certain relief and the method and manner of service, by

25   which date.  Instead, I got a contacted by Mr. Fletcher, so I

F9LKVIDM

1    explained to him that I am going to have to put these 12

2    exhibits back together by memory.

3           That will explain any discrepancies as between the

4    page numbers, but I give you all assurances, under penalties of

5    perjury, that to the T, to the page, they have been exactly

6    reproduced.

7           THE COURT:  Okay.  So I have two copies before me, I

8    have the original and I have the courtesy copy.

9           By the way, the general practice, my understanding,

10   for judges in the court, and my practice invariably, is if you

11   give me an order to show cause, particularly one which contains

12   a temporary restraining order, I don't sign an order to show

13   cause with a temporary restraining order without notice to the

14   other side.  So you have to provide notice to the other side,

15   you give a copy of the papers to the other side, and then you

16   come in, so you have -- my understanding is that the general

17   practice of judges in the court is, we don't sign TROs without

18   notice to the other side.  So you give the papers to the other

19   side and then you come in when the judge says I'll hear you on

20   the order to show cause with the temporary restraining order,

21   we'll set up the date for the preliminary injunction, and you

22   can explain why pending a decision on the preliminary

23   injunction you should take a temporary restraining order.

24          It would be the exception rather than the rule that

25   the judges of the court sign TROs without notice to the other

F9LKVIDM

1    side.

2              MR. PEK:  Understood, your Honor.  However, I can --

3    well, I don't want to undermine your Honor's rules, by which I

4    assure you plaintiff and counsel will abide.  However, it's my

5    personal understanding, having spoken with the clerks in room

6    200 and having done this before, that so long as you provide

7    the other side with one hour's notice, which I did, of your

8    intention to appear at this courtroom at this time, to present

9    for the Court an order to show cause seeking X, Y and Z relief,

10   that that is sufficient.

11             I understand completely your Honor's position, and it

12   is not discordant with my experience; it is something of form

13   over substance.  For instance, Judge Swain, the late Judge

14   Sprizzo and Judge Rakoff, from memory, I can recall, denied

15   most of our relief, set a hearing --

16             THE COURT:  Fine.  If that's what you want me to do,

17   having come in, that's not a problem; I will strike all of the

18   requests for temporary relief and set a prompt hearing on the

19   preliminary injunction.  The reason for calling you in is to

20   give both sides the opportunity to talk about the temporary

21   restraining order.  But if you prefer the other practice,

22   that's not a problem.

23             MR. PEK:  Understood, your Honor.  Respectfully, I do

24   not prefer the other practice and I seem to have been mistaken,

25   so I apologize for that.

F9LKVIDM

1          THE COURT:  So, we were really at, you wanted to show

2     me Exhibit 7, I think.  And the email that you were referring

3     to is:  "Hi, Lailani.  Awesome meeting.  Thanks for giving me

4     the time.  Attached is the product info for the pieces you were

5     most interested in"?  Is that it?

6          MR. PEK:  It's the one immediately preceding that

7     email, which I think, on balance, also tends to suggest a sale

8     has been completed.  But it is dated Wednesday, September 2nd,

9     from Mark Grattan, Info@MarkGrattan.com, to

10    HymieBrunette@gmail.com.  "Yes!" in response to the immediately

11    preceding email from Mr. Brunette:  "Hey, just wanted to make

12    sure you got payment.  Hit me back when you can."

13         THE COURT:  Okay.  What do you do with Mark Grattan's

14    argument that you all actually had a partnership?

15         MR. PEK:  In the event that this Court does find the

16    partnership in fact or implied in fact was the relationship

17    between the parties, I find categorically that Mr. Grattan has

18    breached every fiduciary duty that comes attendant to that.

19    And I don't mean to be academic about this, but I will cite

20    Meinhard v. Salmon, where Judge Cardozo did first note that, if

21    we are to be partners in this country, then we owe each other

22    that highest of fiduciary duties.

23         And to not advise your partner of any of these

24    queries?  My client has not recognized a single cent in sales

25    at all.  And I would share Mr. Rao's expectation that if they

F9LKVIDM

```
1    were partners, that Mr. Grattan would of course inform his

2    partner of a potential sale.  But that was not the case.

3              I do also want to note in the way of irreparable

4    harm -- and this is the trademark aside and the partnership

5    aside -- that in the Second Circuit, injuries to one's

6    commercial reputation has been held to be sufficient as

7    evidence of irreparable harm.  Upon information and belief,

8    although I cannot produce the email itself, my client has been

9    led to believe by other sources that the defendant has sent out

10   inflammatory and defamatory statements, emails, to others

11   indicating that he is on a quote-unquote rampage, that he has

12   stolen things --

13             THE COURT:  But that's not a claim in the current

14   complaint.

15             MR. PEK:  No, it is not.  However, we of course

16   reserve the right to amend the complaint --

17             THE COURT:  Sure.

18             MR. PEK:  -- but, most importantly, we are looking

19   forward to a hearing on the preliminary injunction, your Honor.

20             THE COURT:  Okay.  The defendant says no sales are

21   going to be made on the Vidivixi site because the industry

22   knows that there is a dispute between the plaintiff and the

23   defendant.  Do you agree with that?

24             MR. PEK:  I'm sorry, your Honor, could you repeat that

25   one more time?
```

1          THE COURT:  The defendant says, the industry knows

2     that there is a dispute over the name Vidivixi and there are no

3     sales that are going to be made with respect to that site until

4     this is decided.  My question was:  Do you agree with that?

5          MR. PEK:  I disagree with that, based on inter alia

6     the week-old, ten days old emails indicating there were such

7     sales.

8          THE COURT:  No, no, no, but for the period of time --

9          MR. PEK:  Right now?

10         THE COURT:  -- right now from now until the time that

11    the preliminary injunction is decided.

12         MR. PEK:  Yes, I will accept that representation from

13    the defendant, although I am not in a position, nor do I think

14    is the defendant, to say as to what the community is that has

15    the perception of Vidivixi or whether there is a dispute beyond

16    Ms. Lin, who houses the five pieces at issue.

17         Your Honor, if I may address one final point relevant

18    to the order to show cause?

19         THE COURT:  Yes, sure.

20         MR. PEK:  As your Honor is aware, in addition to

21    likelihood of success on the merits and demonstration of

22    irreparable harm, the Federal Rules and case law and the Lanham

23    Act and progeny have made plain that, when relevant, a balance

24    of the hardships or balance of the equities is to be considered

25    for purposes of (a) in the first instance, granting the

F9LKVIDM

requested TRO or, in other instances, in setting the amount of

a bond.  The final exhibit to my client's affidavit, which was

also culled from our or my client's email server, from the

Vidivixi server, tend to indicate that in fact Mr. Grattan does

intend to move on and has engaged other -- or has been engaged,

rather, as a consultant working for other third parties

interested in Mr. Grattan alone.

        I would respectfully submit that in addition to

further supplement, my response to your question before as to

defendants' representation as of now about Vidivixi sales being

made, Exhibit 12 gives me further confidence in my expectation

that they will not be, but, more to the point, that no undue

harm or no -- the balance of the hardships in this case --

forgive me; I'll put it differently.  In the event that this

Court does decide that a temporary restraining order to any

effect concerning Mr. Grattan is warranted, we respectfully

submit that due to the new business ventures, among other

things, such as my client's venture capital investment but

mostly, to what we know, has been a new business opportunity, a

new job, a new gig, if you will, with an entity by the name of

Friends and Family, with whom, upon information and belief,

Defendant Mark Grattan has entered into a consulting agreement,

that under the circumstances no bond is warranted, in part

because he will suffer no harm from this relief being issued,

as he has other going concerns presumably or ostensibly, based

F9LKVIDM

1    upon our review of our own records.

2            THE COURT:  In the request for the temporary

3    restraining order, the first request, to relinquish the rights

4    to the five pieces, that's moot, is it not, because those are

5    the five pieces that Ms. Lin has?  Right?

6            MR. PEK:  Those are the five pieces that Ms. Lin has.

7    And I think it will have to be an issue either for the parties

8    to settle an order, if they can come to an agreement, so as not

9    to split the baby, for lack of a better word, of those five

10   beautiful pieces, those show pieces, but it will be an issue of

11   fact for the Court to determine who and in what proportion the

12   parties or which of the parties own each of those five pieces.

13           MR. RAO:  Your Honor, can I clarify a few things?

14           THE COURT:  Yes, go ahead.

15           MR. RAO:  First, I believe that petitioner is kind of

16   trying to have it both ways here.  Mark Grattan is an

17   independent designer who did enter into a partnership with

18   Francis Bradley.  The complaint seems to allege that he is an

19   independent contractor, in which case, he would own everything

20   he designed, including the logo and the furniture which he

21   designed, absent any work-for-hire agreement.  They seem to

22   want him to be an independent contractor when it suits them and

23   want him to not be when it suits them.

24           The facts are very clear because Mr. Bradley signed

25   contracts stating both of them are cofounders.  The facts are

F9LKVIDM

1    also very clear that Mr. Bradley never paid my client a salary,

2    never signed a noncompete or enforced a noncompete, and there

3    is no understanding that Mr. Grattan is not allowed to sell

4    furniture as himself.  This is a partnership under the brand

5    name Vidivixi, it's a project between the two of them.

6    Mr. Bradley presumably has other going concerns and Mr. Grattan

7    presumably has other going concerns, and I don't, frankly, see

8    the relevance of that.

9             As to the trademark, which seems to be coming up a

10   lot, I just want to very simply state that when Mr. Bradley

11   filed for a trademark there was no such thing as Vidivixi LLC.

12   Vidivixi LLC was a creation of less than a month ago.  It

13   appears to have been a creation simply used as a tool to

14   threaten Jean Lin and my client to give up property and

15   intellectual property that, as I've already stated, Mr. Grattan

16   created.  There simply was no LLC a month ago.

17            THE COURT:  Okay.  I'll have a hearing on the

18   preliminary injunction on October 5, 2015, at 9:00 o'clock in

19   the forenoon.  I don't see any provision in the proposed order

20   to show cause for responsive papers, but responsive papers are

21   due September 28, 2015; reply papers are due September 30,

22   2015.

23            The parties are welcome, if they want, between now and

24   October 5, to take any depositions that they wish.  I'll have a

25   final conference with you on October 2 at 4:30 p.m., in

F9LKVIDM

1   preparation for the preliminary injunction.  I'm prepared to

2   put aside whatever time is necessary on October 5 and October 6

3   for the preliminary injunction hearing, if you want an

4   evidentiary hearing.  If you do, I'll give you time limits, so

5   that two days should be ample for the preliminary injunction

6   hearing.

7           Service of this order is being made in court, so

8   personal service is not necessary.

9           With respect to the temporary restraining order, the

10  defendant represents that they have no intent to register the

11  mark or domain www.Vidivixi.com.

12          With respect to the other requests for a temporary

13  restraining order, those requests are denied.

14          Given the dispute among the parties as to the right to

15  use Vidivixi, I could not make a determination of likelihood of

16  success based upon the papers and arguments at this time.

17  Moreover, there is no showing of irreparable injury between now

18  and the time when the preliminary injunction would be decided.

19  It is unlikely that there are going to be sales, and even if

20  there are sales, that the amount of those sales would be very

21  substantial.  In any event, the amount of those sales can be

22  readily determined.

23          So I will leave in paragraph (g) on the request for a

24  temporary restraining order and I will strike the other

25  paragraphs of the temporary restraining order.  There is no

F9LKVIDM

1    necessity for a bond, in view of the fact that the defendants

2    have no desire, no intent, to register the domain name in any

3    event, and therefore there are no possible damages that result

4    for which a bond would be necessary.

5        Has the plaintiff served the other copy on Ms. Lin and

6    her lawyer?  I want to make sure that she gets copies of this,

7    in view of the fact that I am not requiring personal service; I

8    just want to make sure that they are served.  And I will make a

9    copy of this order and give it to all of the parties here now.

10       MR. PEK:  Ms. Lin has not been served other than by

11   through email.  I have a full courtesy copy, with a blank order

12   to show cause, to accompany your Honor's conformed order to

13   show cause that I can provide Ms. Lin today.

14       THE COURT:  Okay, great.  I'm going to give you the

15   copy of the signed order to show cause now.

16       Anything else?

17       MR. PEK:  One final question:  With respect to the

18   depositions that, given the short time span, I suspect, so long

19   as notice is provided to all parties of any depositions --

20       THE COURT:  You can get expedited depositions.

21   Plainly, you don't need to give ten days' notice.

22       MR. PEK:  Okay.

23       And for purposes of witness testimony at the

24   preliminary injunction hearing itself, need we provide a

25   witness list?  Or is that in your Honor's local rules?

F9LKVIDM

1          THE COURT:  You should provide a witness list.  The

2     witness list should be provided prior to the final conference

3     on October the 2nd.

4          MR. PEK:  Thank you, your Honor.

5          MR. RAO:  Thank you, your Honor.

6          THE COURT:  Okay.

7          (Adjourned)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25