**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------

**VIDIVIXI, LLC ET AL.,**

                    **Plaintiffs,**           15-cv-7364 (JGK)

        - against -                **OPINION AND ORDER**

**MARK ANTHONY GRATTAN ET AL.,**

                    **Defendants.**
------------------------------------

**JOHN G. KOELTL, District Judge:**

    This is a case about an unfortunate falling out between former friends and business partners in a firm that designs high-end furniture.  The firm is incongruously known as "VIDIVIXI," an apparent play on the well-known phrase: "Veni, vidi, vici,"---"I came, I saw, I conquered."  Julius Caesar allegedly used the Latin boast to describe a speedy and decisive military victory,[1] but there is nothing particularly salutary about the parties' current relationship in this case.

    The plaintiffs VIDIVIXI, LLC and Francis Timothy Bradley (collectively, "Bradley"), have moved for a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure against the defendants, Mark Grattan and Mark Grattan Design and Build (collectively, "Grattan").  Bradley seeks, among other remedies, an order enjoining the defendants from using or

---

[1] See generally Matthew Bunson, Encyclopedia of the Roman Empire 87 (2002).

infringing the VIDIVIXI Mark, directing Grattan to turn over any infringing material to Bradley, and ordering Grattan to pay Bradley's costs and fees.

The Court held an evidentiary hearing on December 1 and 2, 2015. Having assessed the credibility of the witnesses and reviewed the evidence, the Court makes the following findings of fact and reaches the following conclusions of law.

I.

Bradley and Grattan have known each other since they were students at the Pratt Institute. Tr. at 18; Grattan Decl. ¶ 7. In 2013, they discussed launching a high-end furniture design business that they called VIDIVIXI.[2] Tr. at 11. They showed their first pieces under the VIDIVIXI name at a Factory Floor Exhibition in the autumn of 2013. Bradley and Grattan collaborated on VIDIVIXI in the years that followed and operated as a de facto partnership. They rented woodshop space at a Sunset Park studio, created a website, and showed their designs at several exhibitions. During their partnership, VIDIVIXI designed fourteen pieces of furniture. See Tr. at 24, 220. The parties dispute who exactly did what during the following two years, but there is no question that both Bradley and Grattan

---

[2] In the original Complaint, Bradley alleged that Grattan was an independent contractor. In the Amended Complaint and at the evidentiary hearing, Bradley stated that he and Grattan entered into a de facto business partnership pursuant to New York Partnership Law § 10. See Amended Compl. ¶ 54; Tr. at 24-25.

contributed to the progress of the partnership.  Compare, e.g., Tr. at 14-15, with id. at 199-200.  Bradley contends that he raised money, built and designed products, conducted development and research, handled outsourcing, and "everything else in between."  Tr. at 14-15.  Grattan contends that he designed the VIDIVIXI logo, fabricated the furniture, maintained the website, and marketed the products, while Bradley mostly contributed a capital investment of about $80,000 and some conceptual ideas.  See Grattan Decl. ¶¶ 13-22; Tr. at 15, 199-202.

Regardless of the specific division of labor, the VIDIVIXI furniture was the result of a collaboration between Bradley and Grattan, and they held themselves out as a de facto partnership.  See Tr. at 24, 220.  For example, in April 2014, Bradley and Grattan signed a contract to display five of their VIDIVIXI pieces in the "Good Colony" showroom.  See Grattan Decl. ¶ 45-46 & Ex. 16.  The contract identified Bradley and Grattan as "Co-Owner[s]" of VIDIVIXI.  See Grattan Decl. ¶ 45, Ex. 16.

VIDIVIXI furniture was also entered in Architectural Digest Home Design Shows in March 2014 and in March 2015, in the Collections at a Colony show in May 2015, and in the Le Bon Marche/Triode Gallery show in September 2015.  See Grattan Decl. ¶ 53.  In correspondence with gallery owners before the 2014 and 2015 Architectural Digest Home Design Shows---on which Bradley was courtesy copied---Grattan referred to Bradley as his

3

"partner," Grattan Decl. Ex. 17, and used words like "us" and "our" when referring to VIDIVIXI, Grattan Decl. Ex. 18.  In July 2015, both Bradley and Grattan signed a contract with the Triode Gallery as "Principal[s]."  Grattan Decl. Ex. 19.  The VIDIVIXI website also describes the entity as "a design collaborative" and lists Bradley and Grattan as "principals."  Grattan Decl. Exs. 7 & 8.  In retrospect, both Bradley and Grattan have described their relationship as a "collaboration" and a "partnership."  See, e.g., Tr. at 21, 199, 253.

On March 27, 2015, long after the de facto partnership began, Bradley applied to register the VIDIVIXI trademark on behalf of a "Francis T. Bradley Limited Liability Company," which is a company that does not actually exist.  See Bradley Aff. Ex. 3; Tr. at 37

The relationship between Bradley and Grattan began to sour in the summer of 2015.  Grattan sent Bradley a partnership proposal on August 25, 2015 to formalize their relationship.  See Grattan Decl. ¶ 78.  Bradley did not sign the proposed partnership agreement.  The next day, on August 26, 2015, Bradley organized VIDIVIXI as a Domestic Limited Liability Company under New York law.  See Bradley Aff. Ex. 1.  On August 31, 2015, after a verbal confrontation with Grattan at the Sunset Park woodshop, Bradley removed from the space his tools, a laptop he had loaned to Grattan to use, and an external hard

4

drive that Grattan states was his property.  See Bradley Aff. ¶ 43 & Ex. 10; Grattan Decl. ¶ 67.  On the laptop, Bradley found what he contends are invoices for sales of VIDIVIXI furniture---evidence, he alleges, that Grattan sold VIDIVIXI pieces without Bradley's knowledge and kept the proceeds for himself.  See Bradley Decl. ¶ 15 & Ex. 6.  Bradley also alleges that Grattan took "control" of the VIDIVIXI website, implemented a "click-through" mechanism whereby anyone who visited Grattan's website would be directed to the VIDIVIXI homepage, and at one point shut down the VIDIVIXI website.  See Bradley Aff. ¶¶ 9-13.  After the woodshop confrontation, Grattan sent an email in which he described Bradley as going on a "rampage" following their "significant falling out," called him "a threat to me," said Bradley took Grattan's external hard drive, and said that Bradley should be barred from the woodshop.  See Pl.'s Ex. 1.

Bradley alleges that Grattan launched a "VIDIVIXI-takeover plan," Amended Compl. ¶ 7, and undertook "a grand scheme of misappropriation of propriety information and material," id. ¶ 5. While Bradley states VIDIVIXI has not "earned a single cent," id. ¶ 12, he contends Grattan brokered "at least 20 separate sales of furniture . . . under the trademark and trade name and associated good will of VIDIVIXI," id. ¶ 7.  Aside from Grattan's alleged sales, Bradley states VIDIVIXI never sold a piece of furniture.  See Tr. at 53-54.

The evidence failed to support Bradley's claims that Grattan sold VIDIVIXI furniture without Bradley's knowledge and approval. Grattan testified credibly that some of the "invoices" Bradley found were merely proposals for sales prepared in response to inquiries to purchase VIDIVIXI furniture (proposals that never led to sales). Several of the invoices have the word "Proposal" written at the top. See Bradley Aff. Ex. 6. Grattan testified that Bradley approved the one sale Grattan did make of a piece of VIDIVIXI furniture, called the Dakku Bedframe, and that Bradley told Grattan to keep the proceeds in full. See Tr. at 222-28. The remaining invoices did not relate to the fourteen pieces of VIDIVIXI furniture but to furniture that Grattan had built for his personal design firm that was unaffiliated with VIDIVIXI. See Tr. 220-22. Grattan also testified that a computer glitch caused the website to crash temporarily. See Tr. 248.

About two weeks after the confrontation at the woodshop, Bradley filed this action. In his original Complaint, Bradley alleged numerous causes of action, which he has supplemented in his Amended Complaint. Among other claims, Bradley now alleges: 1. Federal trademark infringement and reverse confusion pursuant to 15 U.S.C. §§ 1114, 1125(a); 2. Federal unfair competition pursuant to 15 U.S.C. § 1125(a); 3. Common law trademark infringement; 4. Common law unfair competition; 5. Federal false

6

designation of origin pursuant to 15 U.S.C. §§ 1114, 1125(a); and, 6. Deceptive business practices under state law pursuant to New York General Business Law § 349.³  Bradley now seeks a preliminary injunction under Federal Rule of Civil Procedure 65 to enjoin Grattan from using the VIDIVIXI Mark, unfairly competing with Bradley, and aiding and abetting anyone who does.

**II.**

The standards that govern the issuance of a preliminary injunction are well established.  "A party seeking a preliminary injunction ordinarily must show: (1) a likelihood of irreparable harm in the absence of the injunction; and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the movant's favor."  Doninger v. Niehoff, 527 F.3d 41, 47 (2d Cir. 2008).  In addition, because the plaintiff seeks a mandatory injunction requiring the defendant to take affirmative action that will alter the status quo, the plaintiff must show a clear

---

³ Bradley also sued Jean Lin and Jean LLC d/b/a "Good Colony," where five pieces of VIDIVIXI furniture were shown, for breaches of contract and the implied covenant of good faith and fair dealing and for aiding and abetting Grattan's alleged actions. Bradley voluntarily dismissed his suit against the Lin defendants pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i) on October 28, 2015.  In response to a temporary restraining order the Court entered on September 21, 2015, the five pieces of furniture at the Good Colony showroom were removed to a storage facility for which Bradley is paying.  See ECF Dkt. Nos. 4, 56.

likelihood of success on the merits. See Tom Doherty Assocs., Inc., v. Saban Entm't, Inc., 60 F.3d 27, 34 (2d Cir. 1995); see also Ben Hur Moving & Storage, Inc. v. Better Bus. Bureau of Metro. N.Y., Inc., No. 08cv6572 (JGK), 2008 WL 4702458, at *6 (S.D.N.Y. Oct. 3, 2008).

The Lanham Act prohibits the use in commerce, without the consent of the registrant, of any "registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods" in a way that is likely to cause confusion. 15 U.S.C. § 1114(1)(a). "The Act similarly prohibits the infringement of unregistered, common law trademarks." Time, Inc. v. Petersen Pub. Co. LLC, 173 F.3d 113, 117 (2d Cir. 1999) (citing 15 U.S.C. § 1125(a)(1)).

To prevail on a trademark infringement claim "a plaintiff must demonstrate that 'it has a valid mark entitled to protection and that the defendant's use of it is likely to cause confusion.'" Id. (quoting Arrow Fastener Co. v. Stanley Works, 59 F.3d 384, 390 (2d Cir. 1995)). "A mark is entitled to protection when it is inherently distinctive; [or] . . . if it has acquired secondary meaning, i.e., if it has become distinctive of the . . . goods in commerce." Id. (internal citations and quotation marks omitted). Once the possessor establishes a valid mark entitled to protection, "its possessor, in order to succeed on its infringement claim, must prove that

'numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of defendant's mark.'" Id. (quoting Gruner + Jahr USA Publishing v. Meredith Corp., 991 F.2d 1072, 1077 (2d Cir. 1993).

### III.

Bradley has failed to show that he has a likelihood of success on any of his intellectual property claims, much less a *clear* likelihood of success on the merits.  This is so because the evidence adduced thus far shows that the VIDIVIXI Mark is an asset of the de facto partnership between Francis Bradley and Mark Grattan, and, contrary to Bradley's allegations, Grattan has not acted to breach that de facto partnership.

In his Amended Complaint, Bradley asserts that there was, in fact, a de facto partnership between Bradley and Grattan personally.  Amended Compl. ¶ 54.  The evidence supports that such a de facto partnership existed.

"When there is no written partnership agreement between the parties, the court must determine whether a partnership in fact existed . . . ."  Czernicki v. Lawniczak, 904 N.Y.S.2d 127, 131 (App. Div. 2010). To do so, a court looks for four elements: "(1) the parties' sharing of profits and losses; (2) the parties' joint control and management of the business; (3) the contribution by each party of property, financial resources,

9

effort, skill, or knowledge to the business; and (4) the parties' intention to be partners." Kidz Cloz, Inc. v. Officially For Kids, Inc., 320 F. Supp. 2d 164, 171 (S.D.N.Y. 2004); see also Griffith Energy, Inc. v. Evans, 925 N.Y.S.2d 282, 283 (App. Div. 2011).

Bradley and Grattan met these four elements. VIDIVIXI had no profits, but both Bradley and Grattan contributed to its losses financially and through their labor and expertise. See, e.g., Tr. 14-15, 31, 39 (Bradley's contributions); id. 197-98; 245-36, 262-64 (Grattan's contributions). They worked to design and fabricate the furniture, promote the company, and they repeatedly held themselves out as partners. See Part I, *supra*.

Partnerships can own intellectual property, such as patents, copyrights, trademarks, and trade names. See N.Y. P'ship L. § 12 ("All property originally brought into the partnership stock or subsequently acquired, by purchase or otherwise, on account of the partnership is partnership property."). The VIDIVIXI logo, the designs for VIDIVIXI furniture, and the furniture itself constitute partnership assets. See, e.g., First Metlife Inv'rs Ins. Co. v. Zilkha, No. 08CV10113 (HB), 2009 WL 2999607, at *5 (S.D.N.Y. Sept. 21, 2009), *aff'd sub nom*., Patou v. Zilkha, 372 F. App'x 187 (2d Cir. 2010) (two doctors in partnership/joint venture jointly owned intellectual property associated with enterprise including

10

trademarks, the copyright to the book and, allegedly, a patent). The parties conceded as much at the evidentiary hearing. See Tr. at 24-25, 80-81, 199-200.

Grattan's efforts to market and sell VIDIVIXI furniture were not in breach of the partnership because Grattan had the right, as partner, to use the VIDIVIXI name and designs to promote the business.[4]  Moreover, the credible evidence showed that there was only one item of VIDIVIXI furniture that was sold, and Bradley agreed that Grattan could keep the proceeds of that single sale.

Because Bradley has failed to show that Grattan breached the partnership agreement or has used the intellectual property of the partnership in an unauthorized way, Bradley has not established either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them

---

[4] Bradley argues that the company "VIDIVIXI, LLC" now owns the intellectual property.  That argument is unpersuasive.  VIDIVIXI, LLC was organized in August 2015, long after Bradley and Grattan's de facto partnership created VIDIVIXI's logo, website, and furniture.  Bradley had no authorization to appropriate the intellectual property of the partnership for himself alone.  Furthermore, Bradley's "intent to use" application, which he filed in March 2015 on behalf of "Francis T. Bradley, LLC"---an apparently nonexistent corporate entity---is void because the application was not filed by the entity that intended to use the mark or an entity that had the right to claim the mark.  See Oculu, LLC v. Oculus VR, Inc., No. SACV 14-0196 (DOC), 2015 WL 3619204, at *6 (C.D. Cal. June 8, 2015) (quoting Am. Forests v. Sanders, 54 U.S.P.Q.2d (BNA) 1860, 1862 (T.T.A.B.1999), aff'd, 232 F.3d 907 (Fed. Cir. 2000) (per curiam)).

a fair ground for litigation to justify a preliminary injunction.  See Blanksteen v. N.Y. Mercantile Exch., 879 F. Supp. 363, 368 (S.D.N.Y. 1995).

Similarly, Bradley has failed to show a balance of the equities in his favor.  The evidence establishes that the intellectual property was developed as part of the collaboration between Bradley and Grattan.  Bradley has no equitable claim to sole possession of the property and the right to exclude Grattan from the use of that property.  As the Court emphasized to the parties at the evidentiary hearing, the parties should either find a way to work together or determine how the partnership assets can be equitably divided.  But Bradley has no equitable claim to take all of the assets that he concedes were developed as partnership assets.

Moreover, Bradley has failed to establish irreparable injury.  There is no evidence that Grattan is acting in a way that has harmed or will harm the assets of the partnership, Bradley's interest in the partnership, or Bradley personally. Indeed, if there were an unaccounted for sale of VIDIVIXI furniture, such a sale could be readily compensated with money damages.  See, e.g., Jayaraj v. Scappini, 66 F.3d 36, 38-39 (2d Cir. 1995); Stokely-Van Camp, Inc. v. Coca-Cola Co., 646 F. Supp. 2d 510, 532 (S.D.N.Y. 2009).  These circumstances do not warrant the "extraordinary and drastic remedy" of a preliminary

injunction.  See Munaf v. Geren, 553 U.S. 674, 689-90 (2008) (citation omitted).

Bradley has failed to establish an entitlement to a preliminary injunction.

## CONCLUSION

The Court has considered all of the arguments raised by the parties.  To the extent not specifically addressed, the arguments are either moot or without merit.  Bradley's motion for a preliminary injunction is **denied**.

**SO ORDERED.**

**Dated:    New York, New York
           January 11, 2016**              _____/s/_____
                                              **John G. Koeltl
                                           United States District Judge**

13