UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

VIDIVIXI, LLC *and* FRANCIS T.
BRADLEY

v.

MARK A. GRATTAN, JEAN LIN,
MARK GRATTAN DESIGN & BUILD
JEAN LIN, LLC *d/b/a* "GOOD COLONY"

---

Case No. 15-CV-7364 (JGK)

## MEMORANDUM OF LAW IN SUPPORT OF
## GRATTAN'S MOTION FOR FEES AND COSTS

Siddartha Rao, Esq.
RAO LAW GROUP
Attorneys for Defendant
54 W. 40th St. 4th Fl.
New York, New York 10018
Phone: 212 548 4539
Fax: 646 741 3257

## TABLE OF CONTENTS

PROCEDURAL BACKGROUND ..................................................................... 1

SUMMARY OF THE ARGUMENT ............................................................... 1

ARGUMENT ..................................................................................................... 10

   I.  THE COURT SHOULD EXERCISE ITS EQUITABLE DISCRETION TO AWARD FEES UNDER THE LANHAM ACT ......................................................... 10

    A.  Grattan is a "Prevailing Party" for Purposes of a Fee Award ......................... 10
    B.  The Court Should Grant Fees for Defendants' Fraud or Bad Faith ............. 11
    C.  The Court Should Grant Fees Under the *Octane* Standard, Even Abestn a Fraud or Bad Faith Finding.................................................................. 12
    D.  The Court Should Grant Fees Under its Inherent Authority......................... 13
    E.  The Court Should Grant Fees Under Rule 41 ................................................ 14

   II.  GRATTAN'S FEE REQUEST IS REASONABLE ......................................... 15
    A.  The Fee Amount is Reasonable .................................................................... 15
    B.  The Rates Charged are Reasonable ............................................................. 15
    C.  The Hours Expended were Reasonable ......................................................... 18

CONCLUSION ................................................................................................. 19

## PROCEDURAL BACKGROUND

By Memorandum and Order dated April 16, 2016 this Court dismissed Plaintiffs Francis Bradley and VIDIVIXI, LLC (together, "Plaintiffs" or "Bradley")'s claims with prejudice. [Dkt. 90]. The Court awarded costs to defendants Mark Grattan and Mark Grattan Design & Build (together "Defendants" or "Grattan") and leave to file a motion for attorneys' fees under Fed. R. Civ. P. 54(d)(2)(B). The Clerk entered Judgment on April 18, 2016, giving Defendants until May 2, 2016 to file a motion for fees. (Rule 54(d)(2)(B)(i) (fees motion should "be filed no later than 14 days after the entry of judgment."). This Motion follows, seeking fees and including a Bill of Costs.

## SUMMARY OF THE ARGUMENT

The basis for this motion is simple. The Lanham Act allows this Court to "award reasonable attorney fees to the prevailing party" "in exceptional cases." Here, Grattan is a prevailing party, and this is an "exceptional" case meriting fees.

In the Second Circuit, a trademark case is exceptional when there is evidence of "fraud or bad faith." As the Court is aware, here Bradley manufactured claims out of a void trademark filing and a previously undisclosed limited liability company formation in order to seize partnership property (custom designed furniture) he "had no authorization to appropriate." (January 11, 2016 Decision and Order [Dkt. 73] at p. 11 n. 4). After Bradley failed to obtain the furniture through a legal demand letter or litigation, he simply took the furniture and dismissed this case. There is ample evidence of fraud and bad faith here and the Court should award fees.

Even if the Court does not find fraud or bad faith here, Courts in the Second Circuit and in several sister Circuits have adopted a more lenient approach to

awarding trademark fees after the recent Supreme Court decision in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S.Ct. 1749 (2014) (reversing a Federal Circuit denial of fees). In *Octane*, the Court applied a plain language interpretation of "exceptional" and identified two reasons why a case may be "exceptional" to justify a fee award (1) "the substantive strength of a party's litigating position (considering both the governing law and the facts of the case)" or (2) "the unreasonable manner in which the case was litigated." Grattan respectfully submits that this case is "exceptional" under these *Octane* considerations, and that the Court should award fees. In addition, fees are justified by the Courts' inherent statutory authority to award fees and the policies underlying Rule 41 of the Federal Rules of Civil Procedure.

Finally, the fees sought here are reasonable. Detailed time records annexed to the accompanying Declaration of Siddartha Rao, Esq. submitted herewith show the hours expended and rates applied are reasonable and consistent with rates charged by attorneys of similar experience in this District. Moreover, as this Court is aware, Plaintiffs litigation conduct, including Plaintiffs' service of deficient papers, eleventh hour attempts to cancel hearings and conferences, serial failures to appear at conferences or hearings (on time or at all), counsel's relocation to Vermont and subsequent for months, and Plaintiffs' pursuit of frivolous motion practice all increased time and costs incurred here. Grattan respectfully requests the Court consider these factors in assessing the reasonableness of the hours expended in this Action.

For the foregoing reasons, Grattan respectfully requests that the Court grant this Motion, and enter an order awarding Grattan fees in the amount of $39,560.90 and costs in the amount of $1,583.01.

## FACTS SUPPORTING FEES

### Evidence of Fraud or Bad Faith

As this Court is aware, prior to commencing this action, Bradley worked with Grattan for approximately two years in a *de facto* partnership under the brand "VIDIVIXI," to design high-end furniture. [Dkt. 73 p. 1]. Bradley and Grattan signed several contracts as "partners" "co-owners" or "principals" of VIDIVIXI (Grattan Decl. [Dkt. 35] Ex. 16 &, 19) participated in several exhibitions under the name VIDIVIXI (e.g. Grattan Decl. ¶ 53), held themselves out on their website as "Principals" of VIDIVIXI (Grattan Decl. Ex. 7 & 8), garnered press as VIDIVIXI , and generally held themselves out as business partners (Grattan Decl. Ex. 17 & 18).

However, in March of 2015, Bradley secretly applied to register "VIDIVIXI" as a trademark, for a non-existent entity "Francis Bradley, LLC." He testified that he did this to appropriate trademark rights to himself. In addition, a day after rejecting a proposed partnership agreement from Grattan, Bradley formed a limited liability company, called "VIDIVIXI, LLC," (the "LLC") constituting himself as the sole member and owner. He did not inform Grattan, his business partner, and later testified that he did this to transfer ownership of partnership property to himself through the LLC.

Shortly after forming the LLC in August of 2015, the LLC sent a demand through counsel Matthew Pek to the Colony showroom. (Bradley Aff. [Dkt. 37] Ex. 11). That demand letter wrongly claimed that the LLC was "one of several designer tenants" who rented space in the showroom. As Bradley knew, both Bradley and Grattan had signed an Independent Designer Agreement with the Good Colony showroom as "Principals" of VIDIVIXI, the partnership, and the partnership was the actual designer

3

tenant. (Grattan Decl. Ex. 16). The letter also demanded the "prompt and immediate return of each of the five (5) articles of furniture," claiming that these belonged to the LLC. In fact, the furniture belonged to the partnership, as Bradley was aware. These statements were therefore either knowingly false or made without any investigation by counsel into the facts.

Regardless, the proprietor of the Good Colony showroom advised Mr. Pek that VIDIVIXI is "a partnership co-owned by Francis Bradley and Mark Grattan" and did not acquiesce to the demand. *Id.* Rather than investigate this fact, Bradley commenced a lawsuit on behalf of himself and the LLC, alleging that all property of the partnership was property of the LLC, that Grattan was an independent contractor, and that Grattan had somehow infringed the LLC's rights. Dkt. 14.

Bradley also submitted an affidavit containing several misleading or knowingly false statements in support of these contentions. [Dkt. 37]. Bradley claimed he put "every cent" he's had and "3+ years of blood, sweat, and tears, just for starters . . . ." into the LLC, even though he formed the LLC just prior to commencing suit. (Bradley Aff. ¶ 5). Bradley also claimed the website www.vidivixi.com was Bradley's website, even though the website had always been registered to Grattan, since he used his pre-existing website to design VIDIVIXI's. (Bradley Aff. ¶ 10). Moreover, this Court later found, the website was partnership property. [Dkt. 73]. Bradley also claimed VIDIVIXI was Bradley's "living," (Bradley Aff. ¶ 11), that "Grattan does not and did not have an affiliation with VIDIVIXI," (Bradley Aff. ¶ 14), that VIDIVIXI represents Bradley's "entire life's work" and is Bradley's "business," (Bradley Aff. ¶ 17), and that Grattan was a "freelance independent contractor/woodworker" for VIDIVIXI or "freelance design

4

advisor with potential to one day become part of a design collaborative," (Bradley Aff. ¶¶ 5, 20). In the course of the litigation, Bradley was unable to offer any evidence to support these statements, which were shown to be materially false, since Bradley had knowingly worked as Grattan's business partner for years. Even worse, several contemporaneous business records and third party declarations submitted to this Court evidence that Grattan, and not Bradley, was the primary designer of the VIDIVIXI furniture, logo, and website and took the lead in marketing the VIDIVIXI brand, arranging exhibitions of VIDIVIXI furniture, and placing VIDIVIXI in the press. (See Grattan Declaration and Dkts 27-33).

After a September 21, 2015 hearing on Bradley's request for temporary restraining order Bradley amended his Complaint to add several claims, including claims for breach of partnership duties. However, Bradley continued to pursue trademark claims and to rely on the contradictory statements in his Affidavit. Even after Bradley engaged in extensive third-party discovery and after a two-day evidentiary hearing, Bradley had still presented no evidence or factual support for his trademark claims. At the conclusion of that evidentiary hearing, the Court pointedly explained to Bradley's counsel that his trademark claims had a "problem at the outset":

> If there is a partnership that has rights to the name Vidivixi, isn't there a problem at the outset establishing trademark infringement or any of the other torts that spring from that? Because each of the partners would have the right to use the name, wouldn't they? And so if that's right, then the fact that there could be confusion, as you say, is one of the elements that you never really get to.
>
> If both people have the right to use the name, you don't get to the issue of whether there is infringement because there is a likelihood of confusion or blurring or any of the other possible elements for the intellectual property torts.

(Dec. 2, 2015 Hearing Trans. P. 287:4-14)

5

Yet, Bradley persisted in his trademark claims, even after this Court held that the "VIDIVIXI logo, the designs for VIDIVIXI furniture, and the furniture itself constitute partnership assets," and found Bradley had "not established . . . a fair ground for litigation to justify injunctive relief." ([Dkt. 73] at pp. 10, 11-12). t

Months after the Court's January 11, 2016 denial of injunctive relief Bradley took possession of furniture the parties moved to storage under a written agreement counsel that "if the Court does not grant injunctive relief, Mark [Grattan]'s rights to the furniture should be restored . . . ." [Dkt. 83-14]. When confronted by Grattan's counsel about this, Mr. Pek responded that he saw "no problem with that" and was "planning to move forward with [Bradley's] instructions to discontinue the action." [Dkt. 83-16]. As a consequence, Bradley currently has possession of all furniture created by the VIDIVIXI partnership.

Bradley is a sculptor who has never professionally built or sold furniture prior to his work with Grattan. On the other hand, Grattan earns his livelihood from woodworking and furniture making. By this action, Bradley has abused legal process to appropriate nearly two years of Grattan's labor and potential earnings.

### Facts Relating to *Octane* Considerations

The Supreme Court in *Octane* invited Courts to consider "the unreasonable manner in which the case was litigated," in determining whether a case is "exceptional." Here, several facts show that Plaintiffs litigated this case in an unreasonable manner, justifying fees. At the outset, Grattan notes that this case should never have been more than a simple partnership dissolution and negotiation over partnership assets. Yet, Bradley and Bradley's counsel repeatedly engaged in excessively

6

litigious conduct that wasted attorney time and prevented a resolution.

Delayed Service of Commencement Papers

Bradley's counsel filed order to show cause papers on Thursday September 17, 2015 seeking a temporary restraining order, and at 12:14 am the following Saturday served, *inter alia*, a blank civil cover sheet, a blank Rule 7.1 statement, four blank summons, an unsigned affidavit with missing exhibits, along with references to a missing declaration and exhibits.   Additional documents were served the next day, leaving less than one business day to prepare for the temporary restraining order hearing.

Irrationally Litigious Conduct Concerning Amended Complaint

At that hearing, the Court set a briefing schedule, requiring Defendants to file responsive papers by September 28, 2015.   At approximately 3 am on September 28, Bradley filed an amended complaint with twelve new causes of action, material changes to the original four causes of action, and a new theory of the case admitted to a partnership and alleging breaches of partnership duties.   Several of these causes of action were facially implausible at best (e.g. deceptive trade practices as against Grattan, a business partner, or tortious interference with contract, concerning a contract to which Grattan was a party).   By letter submission that day, Grattan requested additional time to address the likelihood of success on the merits of these new claims.   [Dkt. __].   Mr. Pek replied, characterizing Grattan's letter as "overly argumentative" and "inflammatory," and complaining that Grattan sought an extension "on the very day such opposition is due."   [Dkt. __].   Mr. Pek then failed to appear at a hearing scheduled by the Court, causing hours of wasted attorney time.   These issues were eventually resolved on a telephone conference the following day, resulting in an amended briefing schedule.

7

### Failure to Appear at Injunction Hearing

This Court scheduled an evidentiary hearing on Bradley's request for preliminary injunction for October 15, 2015 with a settlement conference scheduled for October 29, 2015. On October 14, 2015, Bradley's counsel emailed counsel for Grattan suggesting that the hearing be canceled since the settlement conference could moot the need for a hearing. Despite Grattan's counsel's advice to Mr. Pek to contact the Court and his successful efforts to contact Ms. Lin's counsel for a conference call, Mr. Pek and chose not to contact the Court. Around 11pm that night he emailed Grattan's counsel stating: ". . . we'll have to take it up in court tomorrow . . . . I will be available in the morning." [Dkt. 47-1]. However, neither Mr. Pek nor plaintiff Francis Bradley appeared at the hearing the following morning, and Mr. Pek did not respond to several telephone calls and emails from the Court. Mark Grattan, his counsel, and counsel for Jean Lin appeared and wasted several hours. Mr. Pek later explained: "at approximately 10:30 p.m., Plaintiffs' undersigned counsel became severely ill, due to what counsel firmly believes to be a stomach virus, which rendered Plaintiffs' undersigned counsel utterly incapacitated and bedridden until late last night, October 16[th]." [Dkt. 47].

### Refusal to Negotiate at Settlement Conference

Having previously asserted that the upcoming settlement conference obviated a need for an evidentiary hearing (and excused Bradley's non attendance, see e.g., Dkt. 47), and even stating he was "exceedingly optimistic" about settlement Mr. Pek tried to cancel the only settlement conference in this matter. On the eve of the October 29 conference, Mr. Pek faxed a letter to Hon. Magistrate Judge Fox stating Plaintiffs "do not (or no longer) see any utility in going forward with tomorrow's conference as

8

scheduled . . . ." [Dkt. 83-2]. Although the conference ultimately proceeded, it ended prematurely because demanded he be given all jointly created VIDIVIXI property, including tangible and intangible property, refused to consider any counteroffer, and refused to make any other offer. As a result, several hours of preparation for this settlement conference went to waste.

<u>Relocation to Vermont and Failure to Participate in Litigation</u>

This Court rescheduled the evidentiary hearing and authorized expedited discovery a week in advance thereof. Grattan's counsel promptly served document requests on Bradley on November 24, 2015. [Dkt. 83-3]. Mr. Pek repeatedly stated he would produce responses, including by emails on November 24, November 29, and November 30, however he never responded to discovery before the hearing. [Dkts. 83-4, 83-5, 83-6, & 83-7]

After the evidentiary hearing, Mr. Pek, agreed to respond to the outstanding requests. However, he neither propounded discovery nor produced any documents. Instead he became effectively unreachable for several months, as he had a "winter job up in Vermont . . . [and] ha[d] been forced to devote the majority of [his] time practicing law to another case." [Dkt. 83-8]. Grattan was thus unable to negotiate any arrangement concerning the VIDIVIXI furniture or otherwise understand what was happening with the furniture then in storage.

Mr. Pek obtained an extension of the discovery deadline from January 22, 2016 to March 7, 2016. However, over the two months Mr. Pek did not respond to discovery or otherwise address counsel's previously communicated proposals concerning the furniture. Instead, on March 7, 2016 the last day of discovery, Mr. Pek informed

9

Grattan's counsel that he would be serving "plaintiffs discovery requests later this afternoon." [Dkt. 83-12]. He did not, however propound or respond to discovery, or seek further extension of the deadlines.

Dismissal of the Action, and Frivolous Motion Practice

On March 9, 2016 Grattan's counsel provided Mr. Pek evidence that Bradley had taken the previously-stored furniture and exhibited it at an art fair in Tribeca. [Dkt. 83-15]. Mr. Pek responded that he would be dismissing the Action, and filed a notice of voluntary dismissal that same day. [Dkt. 77]. The Clerk rejected this notice due to Grattan's responsive pleading, and on March 14, 2016, Bradley filed a Rule 41(a)(2) Motion for Voluntary Dismissal. [Dkt. 78]. Grattan filed a response three hours late, whereupon Mr. Pek moved to strike, citing inapposite law from other Circuits. [Dkt. 84]. This unnecessary motion required further briefing and wasted counsel time, only to be denied as "frivolous." [Dkt. 87].

**ARGUMENT**

**I.   THE COURT SHOULD EXERCISE ITS EQUITABLE DISCRETION TO AWARD FEES UNDER THE LANHAM ACT**

The Lanham Act authorizes a Court to award fees "to the prevailing party" "in exceptional cases." 15 U.S.C. § 1117(a)(3).

**A.  Grattan is a "Prevailing Party" for Purposes of a Fee Award**

As a threshold matter, Grattan is a "prevailing party" as Plaintiffs claims have been dismissed with prejudice. *Jewelers Vigilance Comm., Inc. v. Vitale Inc.*, 1997 U.S. Dist. Lexis 14386, at *19 (S.D.N.Y. 1997); *Beer v. John Hancock Life Ins. Co.*, 211 F.R.D. 67, 70 (N.D.N.Y. 2002); Moore's Federal Practice § 54.171 (3d ed. 2006) ("a dismissal with prejudice makes the defendant a prevailing party").

## B. The Court Should Grant Fees for Defendants' Fraud or Bad Faith

Courts in this Circuit find cases "exceptional" where there are instances or evidence of "fraud or bad faith." *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 222 (2d Cir. 2003) (affirming fee award). Judges in this District have found cases exceptional and awarded fees where there was "a substantial overtone" that the case "was initiated as a competitive ploy," *Mennen Co. v. Gillette Co.*, 565 F. Supp. 648, 657 (S.D.N.Y. 1983), where a party's assertions were "patently baseless," *Diamond Supply Co. v. Prudential Paper Products Co.*, 589 F. Supp. 470, 476 (S.D.N.Y. 1984) or where "there is no possible way" plaintiff "reasonably could have expected to succeed," *IMAF S.p.A. v. J.C. Penney Co.*, 26 U.S.P.Q.2D (BNA) 1667, 1676-77 (S.D.N.Y. 1992). *See also Simon Says Enters. v. Schaffer*, 218 U.S.P.Q. (BNA) 146, 148–50 (S.D.N.Y. 1982) (awarding fees where Plaintiff's complaint failed to state cognizable claims). Further, the Second Circuit has affirmed fees for "fraudulent conduct in the course of conducting trademark litigation." *Patsy's Brand*, 317 F.3d at 222.

Here, Bradley and Grattan were business partners, yet Bradley knowingly and secretly filed for a trademark and formed an LLC with the same name to improperly appropriate VIDIVIXI partnership property for himself. In furtherance of this, he sent a legal demand letters containing false claims about the LLC's property rights, submitted a sworn affidavit riddled with misleading statements, and finally, when these avenues failed, took the property for himself. Bradley's counsel advertises his skills in intellectual property and trademark law, but persisted in pursuing trademark remedies on a void trademark filing and a strained claim that the later formed LLC owned previously developed partnership property.

11

These facts show that this case was a "competitive ploy," with "patently baseless" assertions that Bradley could not "reasonably have expected to succeed," and that Bradley engaged in "fraudulent conduct" in the course of the litigation.  Accordingly this Court should award fees here.

### C. The Court Should Grant Fees Under the *Octane* Standard, Even Abestn a Fraud or Bad Faith Finding

Even if the Court finds no bad faith or fraud here, it should award fees under the more relaxed standard articulated in the Supreme Court's recent decision in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756-57, 188 L. Ed. 2d 816 (2014).  Since the Supreme Court issued its decision in *Octane*, Courts in this Circuit and across the country have adopted that approach for awarding fees in trademark cases.  *See, e.g.*, *Slep-Tone Entm't Corp. v. Karaoke Kandy Store, Inc., et al.*, No. 14-3117 (6th Cir. Apr. 6, 2015); *Georgia-Pac. Consumer Prods. LP v. Von Drehle Corp.*, 781 F.2d 710, 721 (4th Cir. 2015); *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 305 (3d Cir. 2014).  While *Octane* discusses fee awards under the identically worded fee provision of the Patent Act, the opinion invokes general principles of statutory construction, and not principles of patent law.  Accordingly, it is equally applicable in construing the "identical" Lanham Act provision.  *Id.* at 1756, *citing Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant*, 771 F.2d 521, 526, 248 U.S. App. D.C. 329 (D.C. Cir.1985) (interpreting Section 35 of the Lanham Act).

Cases in this District support this approach, and a recent opinion by Judge Rakoff in this District quotes "there is no reason not to apply the *Octane Fitness* standard when considering the award of attorneys fees under [the Lanham Act]."  *Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 2016 U.S. Dist. LEXIS 46513, *2

12

(S.D.N.Y. Mar. 24, 2016), quoting *Georgia-Pac Consumer Prods.*, 781 F.2d at 721; *see also*, *River Light V, L.P. v. Lin & J Int'l, Inc.*, 2015 U.S. Dist. LEXIS 82940, *28 (S.D.N.Y. June 25, 2015) ("the Supreme Court's recent construction of an identically worded provision of the patent laws . . . offers guidance"). Accordingly, this Court should also apply *Octane* in considering Grattan's fee request here.[1]

In reversing the Federal Circuit's denial of fees, the *Octane* Court held that "exceptional" should be given its ordinary meaning, as a case that "stands out from others with respect to the substantive strength of the party's litigating position . . . or the unreasonable manner in which the case was litigated." *Octane Fitness*, 134 S.Ct. at 1756.

Here, Plaintiffs attempted to use a factually unsupportable trademark action to appropriate partnership property from Grattan, Bradley's business partner. Moreover, the unreasonable manner of Plaintiffs' litigation, including Plaintiffs failure to appear at an evidentiary hearing, counsel's relocation to Vermont for months during the litigation, and Bradley's seizure of partnership property, support a finding that this case "stands out" as "exceptional." Even if the Court declines to find bad faith or fraud here, this Court should award fees under the *Octane* standard.

### D.  The Court Should Grant Fees Under its Inherent Authority

In addition to the Lanham Act, this Court possesses authority to grant fees

---

[1] While (only) one federal judge has held *Octane* strictly applies to the Patent Act. Grattan respectfully submits that the Court should accord that decision little weight as a non-binding opinion, issued hardly a week after *Octane*, and against the great weight of subsequent authority. *See Romag Fasterners, Inc. v. Fossil, Inc.*, 2014 U.S. Dist. LEXIS 113061, *15 (D. Conn. Aug. 14, 2014).

13

under 28 U.S.C. § 1927, which provides that an attorney who "so multiplies the proceedings in any case unreasonably and vexatiously may be required to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." A sanction under this provision is warranted where a party has asserted "colorless claims" or acted in bad faith. *Atrium Cos. v. Unite Here!*, 2011 U.S. Dist. LEXIS 99442, *42 (S.D.N.Y. July 21, 2011); *see*, *Walker v. Carter*, 2015 U.S. Dist. LEXIS 171422, *8 (S.D.N.Y. Dec. 23, 2015) (awarding Defendants attorneys fees due to Plaintiffs' vexatious conduct). The Court should exercise its authority to grant fees here due to Plaintiffs' litigation conduct which generated several hearings in the first month of this case alone, and caused Defendants to expend time and incur costs far beyond what would be ordinarily necessary to dissolve a partnership.

### E.  The Court Should Grant Fees Under Rule 41

The protections afforded Defendants under Rule 41 support an award of fees here. Attorneys' fees are often awarded as a matter of course when a lawsuit is dismissed without prejudice under Rule 41(a)(2) "in view of the risk (often the certainty) faced by the defendant that the same suit will be refiled and will impose duplicative expenses." *Colombrito v. Kelly*, 764 F.2d 122, 133 (2d Cir. 1985) (citing *Smoot v. Fox*, 353 F.2d 830, 833 (6th Cir. 1965)).

Although the Court dismissed Bradley's claims *with* prejudice, Bradley has seized all furniture belonging to the VIDIVIXI partnership, and Grattan will incur fees to enforce his property rights as a VIDIVIXI partner. Grattan therefore respectfully submits that he is in a similar position to a defendant facing a Rule 41 dismissal without prejudice, and that this provides yet another reason for the Court to award fees.

## II.     GRATTAN'S FEE REQUEST IS REASONABLE

### A.  The Fee Amount is Reasonable

Courts in this District use the "lodestar" method in determining fee awards. *Sprint Communs. Co., L.P. v. Chong*, 13-CV-03846 (RA) (S.D.N.Y. July 14, 2014) (collecting cases). This is simply the number of hours reasonably expended multiplied by a reasonable hourly rate and has been held "presumptively reasonable." *Id.* at *14 (awarding fees under the Lanham Act), citing *Telebradns Corp. v. HM Imp. USA Corp.*, 09-CV-3492, 2012 U.S. Dist. LEXIS 128484 at *11 (E.D.N.Y. July 26, 2012) ("the Second Circuit has used the terms 'lodestar' and 'presumptively reasonable' interchangeably."). Here, Grattan uses the lodestar method to calculate fees, and this is reasonable.

### B.  The Rates Charged are Reasonable

In assessing the reasonableness of rates, Courts rely on hourly rates prevailing in the district for similar services. *Id.*, citing *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983)). Here, lead counsel Siddartha Rao's rate is $350/hour, of counsel Brian Bohm's rate is $250/hour, junior associate Laureano Batista's rate is $150/hour and law clerk/paralegal rates are $80/hour. Rao Decl. ¶ 3. These rates are commensurate, or in fact below, those of similarly experienced attorneys in this District. Nonetheless, Grattan seeks recovery only on the discounted rates charged to Grattan which are $300/hour, $200/hour, $100/hour, and $75/hour respectively.

Rao has seven years of experience litigating complex commercial cases, first at the firm of Zeichner, Ellman & Krause LLP where he was associated for several

years. While at Zeichner, Rao worked with clients in complex cases including *Chevron v. Donziger*, 11-CV-00691 (LAK)(JCF), and several intellectual property matters including patent license litigation, rights of publicity, and trademark.

Since starting his own practice in 2014, he has advised clients on several trademark matters, and litigated two trademark actions against a subsidiary of the Mormon Church concerning trademark rights in the word Mormon. He has published and spoken on intellectual property issues and is currently the secretary of the Information Technology and Cyber Law Committee at the New York City Bar Association. (Rao Decl. ¶¶ 6-7). His rate of $300/hour is less than rates approved for comparable counsel in this District in 2008 and 2010. *Malletier v. Apex Creative Int'l Corp.*, 687 F. Supp. 2d 347, 361-62 (S.D.N.Y. 2010) (finding $390.10 per hour reasonable for associate specialized in intellectual property law at mid-size law firm); *Microsoft Corp. v. Computer Care Ctr., Inc.*, No. 06 Civ. 1429 (SLT) (RLM), 2008 U.S. Dist. LEXIS 77853, 2008 WL 4179653, at *14-15 (E.D.N.Y. Sept. 10, 2008) (hourly rate of $385 reasonable for associate with "several years' experience in intellectual property law");

Brian Bohm is admitted in New York and Florida and has five years experience in commercial litigation, first at the firm of Williams, Gautier, Gwynn, DeLoach & Sorenson, P.A. in Miami Florida and then at the firm of Mohen, Cooper & Papagianakis in New York. (Rao Decl. ¶ 8). He is of counsel to Rao Law Group, and his rate of $200/hour is less than rates approved for comparable counsel in this District in 2010. *OZ Mgmt. LP v. Ozdeal Inv. Consultants, Inc.*, 09-CV-8665 (JGK)(FM), 2010 U.S. Dist. LEXIS 138873 *4 (S.D.N.Y. Dec. 6, 2010), report and recommendation

16

adopted 2011 U.S.Dist. LEXIS 1183 (S.D.N.Y. Jan. 5, 2011) (approving rates of $382 and 355 for mid-level associates).

      Laureano Batista was admitted to the Bar of the State of New York in 1994.  He is currently admitted in New York.  He worked as Manager of Corporate Development at Bolivar Goldfield's Limited for four years in Caracas, Venezuela where he managed legal compliance.  He also gained experience in federal litigation working for Albert J. Krieger, P.A. in Miami, Florida.  He is a junior associate with Rao Law Group (due to a hiatus in his legal practice he had five years of legal experience prior to associating with Rao Law Group).  (Rao Decl. ¶¶ 9-11).  His rate of $100/hour is less than rates approved for comparable counsel in this District.

      Two law clerks/paralegals, Darya Kraynaya and Mikel Gjoni also billed time on this matter.  Darya Kraynaya receiving a Fulbright grant to travel to Spain, after which she attended the University of Manchester School of Law in the UK, graduating with an Honors LLB in 2012.  Prior to joining Rao Law Group in 2014, she worked as a paralegal in the Commercial Litigation division of Lewis, Hymanson, Small LLP in Manchester, United Kingdom.  Mikel Gjoni received his J.D. from Hofstra University in 2015 and is sitting for the July 2016 New York bar.  Prior to joining Rao Law Group, he clerked at several small and solo practices in Manhattan and Queens, New York.  The rates of $75 per hour submitting for Kraynaya and Gjoni are reasonable and less than those of comparable paralegals in this District.  *Sprint Communs. Co.,* 13-CV-03846 (RA) at *20 (holding hourly rates of $205, $185, and $180 for paralegals are reasonable).

### C. The Hours Expended were Reasonable

Here, the number of hours expended should be judged in light of Plaintiffs litigation tactics, which created several hearings, duplicative conferences, and motion practice in excess of what might otherwise be reasonable in a different case. For example, Grattan was forced to redo much of its work spent drafting papers responding to Bradley's preliminary injunction motion when Bradley filed a new Complaint the day the response was due. Grattan's counsel also had to prepare twice for an evidentiary hearing as Plaintiffs default prevented the first one from proceeding. This required arranging different witness testimony and additional preparation (due to witness availability issues). These and other actions of Plaintiffs caused Grattan's counsel to expend time and incur costs that were not reasonably within Grattan's control. In light of these circumstances, Grattan's counsel expended a total of 172.50 hours at a fee total of $39,560.90, for a blended rate of approximately $229.34/hour.     This time consisted of 48.2 hours of paralegal time at $75/hour, 5.9 hours of junior associate time at $100/hour, 11.3 hours of counsel time at $200/hour, and 108.1 hours of managing attorney time at $300/hour. It includes attendance at several Court conferences, a two-day evidentiary hearing, and a settlement conference.

## CONCLUSION

For all of the foregoing reasons, this Court should grant Grattan's motion,

enter an order awarding Grattan fees in the amount of $39,560.90 and costs in the amount

of $1,583.01, and grant such other and further relief as it may deem just and proper.

Respectfully submitted,

Siddartha Rao, Esq.
RAO LAW GROUP
Attorneys for Defendant
54 W. 40th St. 4th Fl.
New York, NY 10018
Phone: 212 548 4539

To:     Matthew Pek, Esq.
        Peksquire Group
        Attorneys for Plaintiffs
        387 Grand Street, Suite K203
        New York, New York 10002