UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
VIDIVIXI, LLC *and* FRANCIS T. BRADLEY

                                                           Plaintiffs,            Case No.: 15-cv-7364 (JGK)

        – *against* –

MARK ANTHONY GRATTAN,
MARK GRATTAN DESIGN & BUILD,

                                                          Defendants.
------------------------------------------------------------------------X

**MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR ATTORNEYS' FEES**

                                                           By:    D. Reeves Carter, Esq.
                                                                      401 Broadway
                                                                      Suite 202
                                                                      New York, NY 10013
                                                                      Tel.:  (917) 510-7675
                                                                      *Counsel for Plaintiffs*

Plaintiffs VIDIVIXI, LLC and Francis T. Bradley ("Plaintiffs") respectfully submit their opposition and objections to recover attorney's fees by defendants Mark A. Grattan and Mark Grattan Design & Building (the "Defendants"). As set forth below, Defendants' motion is untimely and without merit, as previously noted by this Court.

**PRELIMINARY STATEMENT**

By its Memorandum Opinion and Order, dated April 18, 2016, this Court already considered and denied Defendants' demand – "[D]efendants also seek an award of attorneys' fees, but there is no readily ascertainable basis for such an award at this time." [Dkt 90, at 2]. There have been no substantial changes since this Court's April 18 Order.

Nonetheless, this Court granted Defendants the chance to make an appropriate motion for an award of attorneys' fees. However, without explanation and without a request for an extension of time, Defendants failed to file their motion in a timely manner. Here, the judgement was entered by the Clerk of Court on April 18, 2016. [Dkt 91]. Defendants' motion to recover fees and costs "must be filed no later than 14 days after the entry of judgement." FRCP 54(d)(2)(B)(1); *see also* Local Rule 54.1(c)(7) ("[a] motion for attorney fees . . . shall be made within the time period prescribed by [FRCP 54]"). Accordingly, the deadline to file the motion was May 2, 2016, yet Defendants did not file their motion until May 3, 2016. [*See* Dkt 93-95]. Ironically, Defendants base their right to recover fees on allegations that Plaintiffs missed and ignored certain discovery deadlines.

In any event, should this Court elect to excuse Defendants' tardiness, then Defendants' motion must be denied for lack of merit, because Defendants have not pointed to any facts or circumstances that make this case so "exceptional" as to compel this Court to shift fees. Further, Defendants merely allege attorneys' fees of nearly $40,000.00, but nothing has been presented to show that Defendants actually paid nearly $40,000.00 to their attorneys. There is no way of knowing whether Defendants agreed to pay or ever paid any attorneys' fees. The true value of the proper attorneys' fees is what Defendants actually paid their attorneys, yet here, there is absolutely no proof.

1

**ARGUMENT**

I.  **DEFENDANTS FAIL TO MEET THE HEAVY BURDEN THAT WOULD WARRANT FEE SHIFTING, BECAUSE THIS CASE IS NOT "EXCEPTIONAL"**

Defendants acknowledge, as they must, that, under the "American Rule," parties must bear their own litigation costs, including attorneys' fees, unless a specific statute or contract allows for the assessment of those fees against the other party. Here, Defendants argue that the Lanham Act allows this Court to award reasonable attorneys' fees to the prevailing party in "exceptional" cases, which must involve bad faith or fraud. Plaintiffs do not dispute that Defendants prevailed in this action, but Plaintiffs deny that this litigation was rooted in fraud and brought in bad faith. Therefore, Plaintiffs should not be required to pay Defendants nearly $40,000.00 for claimed attorneys' fees.

In support of their bad faith assertion, Defendants point to the well-documented and explained illness of Plaintiffs' prior counsel that necessitated the need to reschedule one hearing and certain other delays in discovery. However, during the course of litigation, Defendants never sought any relief for such alleged discovery abuses.

In further support of their demand to recover nearly $40,000.00, Defendants allege fraud on Plaintiffs' part, because Defendants maintain that Plaintiffs never had valid trademark infringement claims against Defendants. Even if true, which it is not, Defendants inexplicably ignore the fact that Plaintiffs brought several additional claims against Defendants. These additional claims had nothing to do with the trademark claims. Defendants do not even mention – much less argue – that these other additional claims were based on fraud. In sum, Defendants fail to demonstrate that Plaintiffs brought this litigation in bad faith or with fraudulent intentions. Absent a showing of bad faith or fraud, Defendants cannot maintain that this case is "exceptional," which is fatal to Defendants' demand for nearly $40,000.00 for attorneys' fees.

Defendants recognize that there is no solid ground for a finding of bad faith or fraud, and so, they argue for what they incorrectly perceive to be a more lenient standard. Defendants' reliance on *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S.Ct. 1749 (2014), however, is misplaced. *Octane*

simply confirms that courts may award attorneys' fees in "exceptional cases." This has always been the rule. *Octane*, however, allows courts additional discretion to consider what facts and circumstances (other than bad faith or fraud) might make a case "exceptional." Here, however, Defendants fail to cite any other facts or circumstances, separate and apart from their allegations of bad faith and fraud.

To be sure, discovery delays and requests to reschedule court appearances can be inconvenient to speedy litigation. However, they are not signs of bad faith or fraud, but rather can be expected from time to time. Indeed, during the course of litigation, Defendants requested two extensions of time prior to the evidentiary hearing. Notwithstanding Defendants' gripes, this entire litigation -- from the filing of the complaint to the final dismissal order -- was completed in less than seven months. Plainly, this case moved swiftly.

In any event, as this Court noted in its Memorandum Opinion and Order, "[t]he defendants point to alleged discovery abuse but the defendants never sought relief during the course of the litigation." (Dkt 90, at 2) (emphasis added). Instead, in nearly every instance, Defendants agreed and consented to Plaintiffs' request(s) for additional time to complete discovery. Defendants certainly had every opportunity: (1) to move to compel discovery compliance or document production; (2) to seek monetary or some other form of sanctions; or (3) to strike the pleadings altogether while the litigation was still pending. Inexplicably, Defendants took no action. Defendants' attempt to recover alleged attorneys' fees after the case has already been dismissed comes too late to be taken seriously.

Turning to Defendants' allegation of fraud on Plaintiffs' part, Defendants seemingly allege that Plaintiffs never had a legitimate basis to bring trademark infringement claims against Defendants; and therefore, the entire litigation was rooted in fraud. This argument fails for two reasons. **First**, Plaintiffs brought several claims against Defendants that were unrelated to the trademark infringement claims. Defendants fail to address the merits of these other claims. Thus, it cannot be concluded that the entirety of Plaintiffs' action was based on fraud. **Second**, there was an evidentiary hearing concerning Plaintiffs' trademark claims, and although this Court stated that Plaintiffs faced a "problem at the outset" with establishing certain trademark rights, neither this Court nor Defendants ever went so far as to suggest that

3

fraud was at play. Defendants cannot do so now. Importantly, even if Plaintiffs had taken this case to trial and were ultimately unsuccessful on their trademark claims, "a plaintiff's failure to prevail on its claims, standing alone, is not enough to anchor a claim of bad faith." *Farberware Licensing Co., LLC v. Meyer Mktg. Co., Ltd.*, 428 F. App'x 97, 99 (2d Cir. 2011).

Here, "[t]he focus of the bad faith inquiry in the exceptional cases context is whether the plaintiff had a credible, good faith basis on which to rest its Lanham Act claims." *Id*, at 100. Defendants appear confused about their requirement to demonstrate Plaintiffs' bad faith or fraud. For example, in support of their motion, Defendants chronicle alleged bad faith and fraudulent acts and conduct carried out by Plaintiffs prior to commencing the litigation, but with the noted exceptions of alleged discovery abuses, Defendants fail to cite any action or conduct undertaken by Plaintiffs during the course of litigation that constitutes fraud and bad faith. However misguided Plaintiffs' actions might have been, testimony from the evidentiary hearing confirms that Plaintiffs took certain actions in the hopes of preserving their rights in the business that they had single-handedly funded. Had Defendants believed that Plaintiffs' actions and conduct amounted to cognizable claims, then Defendants could have and should have filed counterclaims, and yet no counterclaims were filed.

Testimony from the evidentiary hearing also confirms that the parties failed to formally and clearly identify their roles in and rights to ownership in the business, including rights to the intellectual property. Although this lack of clarity led to confusion, Plaintiffs certainly had a credible belief that they had superior rights in the intellectual property, given that (1) Plaintiffs, not Defendants, funded the entire enterprise; and (2) the scope of the parties' *de facto* partnership was far from certain.

To be clear, litigants come to court every day seeking to have their rights interpreted, defined, or enforced. They do so in good faith and without fraudulent purposes. Here, Plaintiffs were not the exception. And this case was not so "exceptional" such that Plaintiffs must now be ordered to pay Defendants nearly $40,000.00 for attorneys' fees. Defendants' frustration is duly noted, but the law does not permit fee shifting to compensate for frustration. Rather, to do so, the law requires that Defendants demonstrate that this case is somehow "exceptional." Admittedly, this burden of proof is heavy. Here,

Defendants fail to show bad faith or fraud on the part of Plaintiffs, and further fail to provide this Court with any other facts or circumstances that make this case "exceptional." Accordingly, Defendants' requests for attorneys' fees must be denied.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that Defendants' motion for attorneys' fees in the amount of $39,560.90 be denied. Plaintiffs do hereby consent to pay Defendants' costs in the amount of $1,583.01.

Dated: New York, New York
        June 17, 2016

Respectfully Submitted

D. Reeves Carter, Esq.

By: /s/ D. Reeves Carter
401 Broadway
Suite 202
New York, New York 10013
Tel.:   (917) 510-7675
Email:  d.reeves.carter@gmail.com
*Counsel for Plaintiffs*